(59 South. 820.)

No. 19,054.

LOUISIANA RY. & NAVIGATION CO. v. RAILROAD COMMISSION OF LOUISIANA.

(June 28, 1912. Rehearing Denied Oct. 21, 1912.)

*(Syllabus by the Court.)*

1. CARRIERS (§ 12*)—RATES—ESTABLISHMENT —COMPENSATION.
    A reduced rate on a particular commodity cannot be said to be reasonable and just when it is established without regard to whether the existing rate is high or low, as compared with rates on other commodities, and without regard to whether it will pay the cost of the service rendered, or yield a fair·return to the carrier upon the capital invested.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

2. CARRIERS (§ 12*)—RATES—UNREASONABLE RATE.
    An oil company has the advantage that it may charge a railroad company what it pleases for its oil; whereas the state will not permit the railroad company to overcharge or discriminate against the oil company with respect to the transportation that it sells. The state will not, however, undertake to compel a railroad company to transact its whole business at a loss, for that would be to violate the Constitution of the United States; nor will the courts of the state undertake to compel such company to· transact any part of its business upon unreasonable terms, merely that particular persons, whether incorporated or not, may profit thereby, for that would be to violate the Constitution of the state, and, perhaps, of the United States as well.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

3. CARRIERS (§ 12*)—FREIGHT RATES—UNREASONABLENESS.
    The Railroad Commission's order, No. 976, of February 26, 1909, establishing and reducing the rate on petroleum and its products in less than car load lots, is unauthorized, because unreasonable and unjust, and is set aside.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit by the Louisiana Railway & Navigation Company against the Railroad Commission of Louisiana to restrain enforcement of an order fixing the rates on petroleum in less than car load lots. From a judgment of dismissal, plaintiff appeals. Reversed.

Wise, Randolph & Rendall, of Shreveport, and Laycock & Beale, of Baton Rouge, for appellant. Walter Guion, Atty. Gen., and R. G. Pleasant and W. M. Barrow, Asst. Attys. Gen. (C. D. Chamberlin, of Cleveland, Ohio, of counsel), for appellee.

## Statement of the Case.

MONROE, J. Plaintiff attacks defendant's order No. 976, of February 26, 1909, establishing rates for the transportation of petroleum and its products in less than car load lots, on the ground that it is unreasonable, unjust, confiscatory, and in contravention of the state and federal Constitutions.

We find from the evidence: That plaintiff's road was built but a few years ago through a sparsely settled country at a cost of about $17,000,000, a considerable part of which is represented by bonds, secured by mortgage. That it has never paid a dividend upon its stock, and since 1905 has not paid the interest on its bonded debt. That during the year ending June 30, 1908, its total net income from the operation of its road and from its rentals was $32,522.64. That during the same period it paid out: For taxes, $37,209.87; for hire of equipment, $56,445.56; for rentals, $20,317.22. That during the year ending June 30, 1909, the net operating revenue, plus rentals received, amounted to $92,885.80. That there were paid out: For taxes, $42,770.50; for hire of equipment, $34,778.25; for rental, $20,958.93; for interest on car notes and current liabilities, $33,386.53. That the percentage of operating expense to operating revenue in 1908 (ending June 30th) was 97.46, and for 1909 98.85. That the gross revenue per ton mile from all oil handled in 1908 was 11 mills, and the cost per ton mile, during the same period, for handling all freight 13.6 mills. That the revenue per ton mile from all oil handled in 1909 was 8 mills, and the cost per ton mile, during the same period, for handling all freight 12.8. That the cost of handling oil is greater than that of handling other commodities. That plaintiff's freight cars cost from $840 to $850 each, and during the years 1908 and 1909, respectively, yielded each a revenue, above the expense of handling, of 35.39 cents and $1.63. That during the year 1908 the oil traffic from the four principal points from which it is conducted by plaintiff yielded revenue as follows: From Shreveport, $900; from Alexandria, $1,433.34; from Baton Rouge, $97.42; from New Orleans, $388.31. That for the year ending June 30, 1908, plaintiff's business showed a deficit (interest on capital invested considered) of $575,000, and for the year ending June 30, 1909, a deficit of $513,-333.42. That, had the order in question gone into effect in 1908, plaintiff's gross revenue from the oil traffic would have been reduced from $2,989.71 to $1,449.74. That said order reduces the rate for less than car load shipments below that established for car load shipments, and below the rates established for less than car load shipments in Alabama, Arkansas, Georgia, Illinois, Kentucky, Mississippi, Oklahoma, Tennessee, and Texas, in which states the rates for less than car load shipments are lower than for car load shipments. That prior to the issuance of said order, there was no complaint of the existing rate, and no demand from Shreveport, Alexandria, or Baton Rouge for a change, and that the order was issued at the request of a few corporations engaged in the oil business in New Orleans, in order to enable them to compete with other concerns which ship in car load lots and peddle through the interior—town and country—from tank wagons. We further find that the business done by those corporations over plaintiff's road was small, at best, yielding plaintiff but $200 or $300 a year; and the evidence fails to satisfy us that up to the date of the trial, which was, perhaps, a year after the event, the reduction in the rate had yielded a profit to all the dealers combined equal to the loss inflicted upon the plaintiff; and it seems quite certain that none of the profit, whatever it may have been, reached the pockets of the consumers.

## Opinion.

[1] The Constitution (article 284) confers upon the Railroad Commission power to adopt reasonable and just rates, and no other; and, whilst we do not doubt the intention of the members of the Commission to exercise that power with entire singleness of purpose, we are of opinion that they have fallen into error in this instance, which we think is governed by the interpretation placed upon the mandate of the Constitution in a comparatively recent case, in which it was held that (quoting from syllabus):

"A reduced rate upon a particular commodity cannot be said to be reasonable and just when it is established without regard to whether the existing rate is high or low, as compared with rates on other commodities, and without regard to whether it will pay the cost of the service rendered, or yield a fair return to the carrier upon the capital invested." Morgan's, etc., Co. v. Railroad Commission, 127 La. 637, 53 South. 890.

[2] The state exercises the power to regulate corporations and particularly those engaged in public service, because, having conferred upon them the corporate franchise and the rights incidental thereto, it is incumbent upon her, in the interest of the body of her citizens, from whom the power to make the grant is derived, to see to it that the franchise and rights so conferred are not used for purposes of oppression, or for the inordinate aggrandizement of the few at the expense of the many. But there are citizens behind railroad corporations, as well as behind oil companies and desks and counters, and we do not understand it to be the purpose of the Constitution to oppress or discriminate against the one class any more than the other; the idea being to live and let live. And, as it is no part of the obligation of the dealer in oil to bear the expense of maintaining a railroad, so it is no part of the obligation of the railroad company to bear the expense of building up the business of the oil dealer. The latter, it is true, has the advantage that he may charge the railroad company what he pleases for his oil; whereas the state will not permit the railroad company to overcharge, or to discriminate against, him with respect to the transportation that it sells. The state will not, however, undertake to compel the railroad company to transact its whole business at a loss, for that would be to violate the Constitution of the United States; nor will the courts of the state undertake to compel such company to transact any part of its business upon unreasonable terms, merely that particular persons, whether incorporated or not, may profit thereby, for that would be to violate the Constitution of the state, and, perhaps, of the United States as well.

[3] In the instant case we are of opinion that the order complained of operates to that effect, and should be annulled.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against defendant, the Railroad Commission of Louisiana, decreeing null, void, and of no effect its order, No. 976, of date February 26, 1909, reducing established freight rates on petroleum and its products in this state. Defendant to pay all costs.